FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH M.,[1] <br><br>         Plaintiff, <br><br>   vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>         Defendant. | No. 1:18-cv-03091-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 16, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 16, and grants Defendant's Motion, ECF No. 17.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 5, 2014, Plaintiff applied for Title II disability insurance benefits, alleging a disability onset date of January 12, 2014. Tr. 167-73. The application was denied initially, Tr. 102-08, and on reconsideration, Tr. 110-15. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 29, 2017. Tr. 42-68. On May 19, 2017, the ALJ denied Plaintiff's claim. Tr. 12-38.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 12, 2014, through his date last insured of September 30, 2015. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: spinal impairment, obesity, and affective disorder. Tr. 17. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 17. The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff] had the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally. He could stand and/or walk for

two hours in an eight-hour workday. He could sit for six hours in the same period. He could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He could not climb ladders, rope, and scaffolding. He needed to avoid concentrated exposure to hazards. He could understand, remember, and carry out simple instructions. He could make judgments commensurate with the functions of unskilled work (i.e., work which needs little or no judgment to do simple duties that can be learned in thirty days or less). He could respond appropriately to supervision and coworkers. He could tolerate occasional changes in the work environment.

Tr. 21, 31.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as document preparer, final assembler, and escort vehicle driver. Tr. 30-31. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from January 12, 2014, the alleged onset date, through September 30, 2015, the date last insured. Tr. 31.

On April 23, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability income benefits under Title II of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ properly determined that Plaintiff could perform other work in the national economy at step five.

ECF No. 16 at 4.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his subjective symptom claims. ECF No. 16 at 7-10. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the

claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529 (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 22.

### 1. Ability to Work with Impairments

The ALJ found Plaintiff's allegations were inconsistent with his past ability to work with his impairments. Tr. 22. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling). The ALJ noted that Plaintiff reported his spinal impairment resulted from an injury that occurred in approximately September

2013.  Tr. 22; *see* Tr. 271 (Plaintiff reported that he was lifting heavy boxes in a back room at Walmart on September 28, 2013 and afterwards he began getting progressive low back pain, severe burning, aching pain, and numbness along the left lower extremity); Tr. 326 (Plaintiff reported that he was involved in a work accident at Walmart on September 26, 2013).  The ALJ indicated that Plaintiff reported a history of depression since his time in the military in 2011 and 2012, and treatment records from April 2012 refer to Plaintiff having previously been on antidepressants.  Tr. 22 (citing Tr. 270, 470).  The ALJ noted that Plaintiff reported he experienced back pain that prohibited him from working by limiting his ability to sit, stand, or bend, and required him to rest in bed most of the time.  Tr. 22, 49-51.  However, the ALJ observed that Plaintiff was able to work following his back injury and despite his depression.  Tr. 22; *see* Tr. 197-98 (Plaintiff's work history report indicated that Plaintiff's position at Walmart between August 2013 and January 2014 required him to stand and/or walk eight hours per day and frequently lift 30 to 40 pounds); Tr. 48 (Plaintiff testified that he worked for Walmart in Texas until early 2014).  The ALJ reasonably concluded that Plaintiff's ability to work with both his spinal impairment from a 2013 injury and his depression from 2011 or 2012, indicated that Plaintiff's impairments were not as severe as he alleged.  Tr. 22.

### 2. Stopped Work for Reasons Unrelated to Impairments

The ALJ found Plaintiff's symptom complaints were less reliable because he stopped working for reasons other than his impairments. Tr. 22. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ noted that Plaintiff testified he experienced back pain that prohibited him from working by limiting his ability to sit, stand, or bend, and required him to rest in bed most of the time. Tr. 49-51. However, the ALJ also noted that Plaintiff testified he stopped working in January 2014 because he mistakenly believed that he had been terminated from his job as an unloader at Walmart. Tr. 22, 48-49. He testified that his Walmart work schedule in January 2014 conflicted with a required meeting with a flight chief, and he had accordingly been told not to come into work at Walmart because of this scheduling conflict. Tr. 48. Plaintiff testified he had mistakenly believed this to be his notice of termination, and by the time this misunderstanding about his termination was revealed, he had already arranged to move to Washington. Tr. 48. The ALJ reasonably concluded that this reason for stopping work undermines Plaintiff's claim that his back pain and depression suddenly made it impossible for him to work at all. Tr. 22. The ALJ permissibly relied upon this reason to discredit Plaintiff's symptom claims. Furthermore, Plaintiff fails to challenge this

finding, so argument on this issue is waived. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). This finding is supported by substantial evidence.

### 3. Lack of Supporting Medical Evidence

The ALJ found Plaintiff's symptom allegations were not consistent with the medical evidence. Tr. 22-26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

First, the ALJ found the medical evidence was not consistent with Plaintiff's allegations of severe physical limitations. Tr. 22; *see* Tr. 49-51. The ALJ

acknowledged that Plaintiff's examinations and test results showed nerve root

impairment in his lumbar spine. Tr. 22; *see* Tr. 272, 307 (January 2014: MRI of

Plaintiff's lumbar spine showed a herniated disc that compromised the left S1

nerve root). However, the ALJ determined that Plaintiff's treatment records

approximate to his disability onset date were inconsistent with the severity of his

alleged physical limitations. Tr. 22; *see, e.g.,* Tr. 538 (Plaintiff did not receive

treatment for his back injury until two or three months after its alleged onset in

September 2013); Tr. 445-47 (January 11, 2014 (day before disability onset date):

Plaintiff visited an urgent care facility and reported mild pain in his lower back,

denied any weakness in his lower extremities, exhibited normal gait and station

with point tenderness in his lower back, and was given Flexeril for his lower back

pain); Tr. 285-89 (January 11, 2014 (day before disability onset date): Plaintiff

visited an emergency room and gave the same complaints as at the urgent care

facility earlier that day, examination of Plaintiff's back was normal except for left

lumbar tenderness, and he was given Morphine and Lorazepam); Tr. 297-99

(January 12, 2014 (alleged onset date): Plaintiff returned to the emergency room

and reported his symptoms had initially improved but then had worsened, denied

having abnormal sensations (paresthesia), inspection of his back was normal with

no tenderness and normal gait, and he was again given Morphine and Lorazepam);

Tr. 308 (January 16, 2014: when initiating a workers' compensation claim a few

ORDER - 14

days after his urgent care and emergency room visits, Plaintiff needed assistance

throughout his examination due to alleged symptoms that prevented him from

walking without assistance[2]); Tr. 271-73 (February 3, 2014: Plaintiff's back pain

had improved from a 10 at its onset to a five on a 10-point scale with conservative

treatment measures, he affirmed his back pain had progressively improved with

these measures with decreased but continued symptoms in his left leg, he displayed

full strength in his right leg and his left knee with 4/5 strength in his left ankle, he

exhibited decreased sensation in the left L5-S1 distribution, and due to his ongoing

improvement Plaintiff declined decompression/microdiscectomy surgery and

instead chose to proceed with conservative treatment, was referred to physical

therapy and prescribed ibuprofen and Flexeril); Tr. 274-75 (February 24, 2014:

Plaintiff described "mild back pain" at a three on a 10-point scale, his left leg

symptoms had improved, he reported his symptoms had "improved tremendously"

with his conservative treatment regimen, he demonstrated full strength in all

_____

[2] This treatment note appears to show an incorrect date. Tr. 308. The treatment

note is dated January 16, 2013, which was prior to Plaintiff's injury in September

2013. Tr. 308. The ALJ states that this treatment note was dated "four days" after

Plaintiff's emergency room visit, and neither party objects to this characterization

of the date. Tr. 23. The Court reads this note as dated "January 16, 2014."

ORDER - 15

muscle groups of all four extremities with intact sensation, and his neurosurgeon consultant predicted his symptoms would continue to improve with conservative treatment).

Based on this record, the ALJ reasonably concluded that Plaintiff's subjective symptom testimony was not supported by the medical evidence. Tr. 22-25. Plaintiff challenges the ALJ's conclusion by offering evidence that Plaintiff argues supports his symptom claims. ECF No. 16 at 8-10; *see, e.g.,* Tr. 272, 307 (January 2014: MRI of Plaintiff's lumbar spine showed Plaintiff had a herniated disc that compromised the left S1 nerve root); Tr. 326 (July 21, 2014: examination by ARNP Dennis Ang showed positive left-sided straight leg raise on the left starting at 15 degrees with severe weakness over his left plantar flexion and dorsiflexion at 3/5 with severely diminished rapid toe raises as well on the left, noticeable atrophy of the left calf more than the right, right side was completely unremarkable at 5/5). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Here, the ALJ's conclusion remains supported by substantial evidence despite the additional evidence identified by Plaintiff. Because the ALJ's finding is based on a rational interpretation of the evidence, the Court defers to the ALJ's interpretation. Furthermore, even if the ALJ did err in

this analysis, the ALJ accounted for Plaintiff's subjective pain symptoms in the RFC by limiting him to sedentary work with additional functional limitations. Tr. 21. Accordingly, Plaintiff is not entitled to relief on these grounds.

### 4. *Improvement After Surgery and Medication Effective in Controlling Symptoms*

The ALJ found Plaintiff's symptom testimony was inconsistent with the significant level of improvement he showed following his spinal surgery, and with documented pain relief from daily use of pain medication. Tr. 23. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ observed that while Plaintiff's surgery on July 21, 2014 did not resolve his spinal impairment, his treatment records and examination findings were consistent with the ability to tolerate sedentary work activity through the date last insured of September 30, 2015. Tr. 23. The ALJ also noted that Plaintiff's allegations of debilitating pain symptoms were inconsistent with his treatment

records through his date last insured, which documented adequate pain relief with daily use of pain medication. Tr. 23; *see, e.g.,* Tr. 343-44 (July 21, 2014: Plaintiff proceeded with spinal surgery); Tr. 349-50 (August 5, 2014: Plaintiff reported "significant improvement" in his symptoms, with reduced back pain and increased activity level, exhibited full strength in his lower extremities, intact sensation in all lower extremity dermatomes, steady and non-antalgic gait, negative straight leg raises, was given instructions to begin weaning off of a back brace in two to three weeks, and was referred to additional physical therapy); Tr. 347-48 (September 2014: Plaintiff was given tapered dosages of Valium and Percocet); Tr. 345-46 (December 2014: Plaintiff reported some degree of continued symptoms in his left leg which were "not as apparent at this point," made no documented references to severe pain symptoms, reported he had not used Valium or Percocet in several days, exhibited full strength, straight leg raise revealed some tightness in his lower back but otherwise no neurological deficit, and pain medication was again tapered with the expectation that he would be completely off pain medication within two months).

The ALJ also discussed Plaintiff's documented adequate pain relief, despite a January 2015 MRI of Plaintiff's lumbar spine which found bulging disks that appeared to cause some nerve root compression at L5-S1, and an August 2015 CT scan of Plaintiff's lumbar spine which was similar to the January 2015 imaging.

Tr.24, 372-73, Tr. 464-67; *see, e.g.,* Tr. 377-78 (January 2015: during an

orthopedic appointment, the provider noted that Plaintiff had been "doing

extremely well," his leg pain had improved, although he exhibited antalgic gait in

his left leg, concurrent with reports of pain symptoms in his left leg); Tr. 379-80

(February 2015: Plaintiff reported some improvement in his pain symptoms, which

were a five on a 10-point scale, displayed slight weakness in his left ankle, and had

stopped his pain medication); Tr. 387-88 (May 2015: Plaintiff had a normal

examination of his lower extremities, moved without difficulty, did not rise to

stand during conversation, was taking no medication, and was told to use ice and

heat for his spinal impairment); Tr. 389-91 (May 2015: Plaintiff reported pain as a

three on a 10-point scale, reported infrequent use of Percocet, "slightly positive"

left straight leg raise, and examination found no significant neurological deficit);

Tr. 479-84 (July and August 2015: Plaintiff reported that his pain symptoms were

manageable with daily use of pain medication, he could tandem walk without

difficulty on the right and with a little difficulty on the left, and he exhibited

"excellent" bilateral strength throughout both of his legs); Tr. 494-501 (July 2015

through September 2015: Plaintiff could rise from a chair without difficulty,

appeared comfortable when seated, and exhibited normal gait). The ALJ

reasonably concluded that the improvement Plaintiff reported in his symptoms

after his July 2014 surgery, along with pain medication, supported a finding that

Plaintiff was capable of sedentary work with additional functional limitations, which was inconsistent with Plaintiff's subjective symptom claims. Furthermore, Plaintiff fails to challenge the ALJ's conclusion, so argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 5. Inconsistent Statements and Exaggeration

The ALJ found Plaintiff's physical symptom claims were undermined by evidence of Plaintiff exaggerating his symptoms, and his mental claims were undermined by Plaintiff's inconsistent reports regarding his depression. Tr. 22-25. The ALJ may appropriately consider a claimant's tendency to exaggerate. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.). In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as

reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

First, the ALJ found Plaintiff's physical symptom claims were undermined by evidence of Plaintiff exaggerating his symptoms. Tr. 22-25. Plaintiff argues that the ALJ failed to explain what statements Plaintiff made that suggested exaggeration or how this undermines Plaintiff's complaints. ECF No. 16 at 8. Despite Plaintiff's contentions, the ALJ referenced two instances of physical symptom exaggeration in the record. Tr. 22-25. The ALJ compared Plaintiff's treatment notes from three visits to an urgent care facility and the emergency room the day before and the day of Plaintiff's alleged disability onset date, with examination notes from just four days later when Plaintiff was initiating a workers' compensation claim. Tr. 22-23, *see* Tr. 285-89, 297-99, 308, 445-47. At the urgent care and emergency room visits on January 11 and 12, 2014, Plaintiff reported mild pain in his lower back, denied any weakness in his lower extremities, denied having abnormal sensations (paresthesia), exhibited normal gait and station with point tenderness, examination of his back was normal except for left lumbar tenderness, and then he had a wholly normal inspection of his back with no tenderness. Tr. 285-89, 297-99, 445-47. The examination notes from four days later revealed significantly different results, as Plaintiff required assistance

throughout his examination due to alleged symptoms that prevented him from walking without assistance. Tr. 308.

The ALJ also cited to evidence after Plaintiff's date last insured that indicated exaggeration of his spinal impairment in pursuit of state assistance. Tr. 24. During an independent medical evaluation in February 2016, examining physician Dr. Seltzer noted Plaintiff was able to sit without any apparent discomfort, but his gait was "grossly abnormal and non-physiologic." Tr. 545. According to Dr. Seltzer, Plaintiff "almost stomps as he is walking and catches himself holding on to [sic] furniture. He demonstrated nothing like that as he was walking into the exam room." Tr. 545. Plaintiff had other non-physiologic examination findings at this time, such as pain with block rotation or light shoulder pressure, he had markedly self-limiting examination of his lumbar spine with global complaints of pain with any movement. Tr. 546. Plaintiff also had inconsistent straight leg raise testing, which was completely negative in the seated position, and when supine his reports of pain with straight leg raise testing were deemed to be internally contradictory. Tr. 546. The ALJ noted that, contrary to Plaintiff's display of slight weakness in treatment settings, he now exhibited "give way collapsing" weakness in his left ankle, in a manner deemed non-physiologic by Dr. Seltzer. Tr. 546. Dr. Seltzer also a deemed a display of decreased sensation in Plaintiff's left leg to be non-physiologic and non-dermatomal. Tr. 546. Dr.

Seltzer reported "[t]his is deemed to be in all probability willful misrepresentation as this examiner knows of no neurological, orthopedic condition that would permit [this finding]." Tr. 547. On this record, the ALJ reasonably concluded that Plaintiff exaggerated his symptoms. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

Second, the ALJ found Plaintiff's allegations of inability to work due to his mental impairment were undermined by Plaintiff's inconsistent reports regarding his depression. Tr. 25. The ALJ's decision to discount Plaintiff's symptom claims because of inconsistencies in statements about depression is not supported by substantial evidence. Plaintiff reported that he is unable to work due to depression and lack of desire to be around other people. Tr. 54, 56-57, 209. The record cited by the ALJ, Tr. 288, 347-48, 387-88, 395-401, does not contain inconsistent statements by Plaintiff about his depression. Read in chronological order, the statements cited by the ALJ indicate that Plaintiff's depression may have been escalating, but do not reveal inconsistencies with other statements made by Plaintiff. Tr. 25-26, *see, e.g.,* Tr. 288 (January 2014: Plaintiff displayed appropriate affect during examination); Tr. 347-48 (September 2014: Plaintiff reported having "some degree of depression" during medical care, with no signs of suicidal ideation at that time or in the past); Tr. 387-88 (May 2015: Plaintiff

reported withdrawing from activities and relationships due to anxiety and

depression and he was again referred to a psychiatric evaluation); Tr. 395-401

(April 2017: Plaintiff reported having depression that included frequent suicidal

ideation and alleged he had lost his ability to concentrate).  The ALJ noted that

despite these allegations and his regular ongoing medical care, Plaintiff had no

documented or reported mental health care.  Tr. 25-26.  As discussed *infra*, while

the ALJ may consider an unexplained, or inadequately explained, failure to seek

treatment when evaluating a claimant's subjective symptoms, this does not support

a finding that Plaintiff made inconsistent statements about his depression.  *See Orn*

*v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  The ALJ's finding is not supported

by substantial evidence.  However, such an error is harmless where the ALJ lists

additional reasons, supported by substantial evidence, for discrediting Plaintiff's

symptom complaints.  *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at

1115 ("[S]everal of our cases have held that an ALJ's error was harmless where

the ALJ provided one or more invalid reasons for disbelieving a claimant's

testimony, but also provided valid reasons that were supported by the record.");

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)

(holding that any error the ALJ committed in asserting one impermissible reason

for claimant's lack of credibility did not negate the validity of the ALJ's ultimate

conclusion that the claimant's testimony was not credible).  Here, as discussed

ORDER - 24

*supra*, the ALJ identified several other reasons, supported by substantial evidence, to find Plaintiff's symptom testimony not credible. The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. Plaintiff is not entitled to relief on these grounds.

### 6. *Lack of Mental Health Treatment*

The ALJ found that Plaintiff's lack of treatment for his longstanding depression further indicates that his mental impairment does not cause any significant limitations in his functioning. Tr. 26. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638. Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *2 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a

claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ determined that Plaintiff's lack of treatment for depression detracted from the reliability of his statements about his mental state, particularly given his history of working despite his longstanding depressive disorder. Tr. 26. Plaintiff reported that he is unable to work due to depression and lack of desire to be around other people. Tr. 54, 56-57, 209. However, the ALJ noted that Plaintiff had no documented mental health care during the relevant period or after the date last insured. Tr. 26. During an independent psychiatric examination in September 2015, Plaintiff affirmed he had no mental health care since the spring of 2014. Tr. 470, 475. Plaintiff also reported a history of using antidepressants in 2011 and 2012, which he then refused to take because of his belief that "they were just masking the problem rather than curing it." Tr. 470. In September 2015, Plaintiff explained that "my attitude before was that it was pathetic to take pills to be happy, but since I'm not progressing now I guess I'd be willing to try them again." Tr. 471. The ALJ noted that Plaintiff's persistent use of benzodiazepines and opiates for pain symptoms indicated that he was not opposed to using psychotropic medication to mitigate impairments. Tr. 26. Further, there is no evidence to suggest that Plaintiff's failure to seek treatment is attributable to his mental

impairment rather than a personal preference. The ALJ reasonably relied on this evidence in evaluating Plaintiff's symptom claims. Furthermore, Plaintiff fails to challenge the ALJ's conclusion, so argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

## B. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Jory Anderson, DC, Eric Rudd, M.D., Paul Furan, PA-C, Dennis Ang, ARNP, Norman Staley, M.D., S. Daniel Seltzer, M.D., John Robinson, Ph.D., Renee Eisenhauer, Ph.D, and Richard Schneider, M.D. ECF No. 16 at 10-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d)

(2013).[3]  However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence.  *Nguyen*, 100 F.3d at 1467.  An ALJ is obligated to give reasons germane to "other source" testimony before discounting it.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff argues that the ALJ distributed weight to the opinions of the providers in the record based on whether their conclusions aligned with the work Plaintiff performed from August 2013 through January 2014.  ECF No. 16 at 11. Yet, ignoring that the ALJ did provide other reasons when discounting the opinions of the treating, examining, and nonexamining sources, Plaintiff failed to identify with any specificity why certain providers should have been credited over others, or how the ALJ erred in weighing the opinion evidence.  There were two examining opinions from acceptable medical sources about Plaintiff's physical conditions: Dr. S. Daniel Seltzer, Tr. 587-95, and Dr. Eric Rudd, Tr. 455-63; one

---

[3] Prior to March 27, 2017, the definition of a medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, were located at 20 C.F.R. § 404.1513(d).

ORDER - 29

nonexamining opinion from an acceptable medical source: Dr. Norman Staley, Tr. 102-08; and two medical opinions from "other sources": treating chiropractor Jory Anderson, Tr. 457-58, and treating advanced registered nurse practitioner Dennis Ang, Tr. 481-82. There was one examining opinion from an acceptable medical source about Plaintiff's mental conditions: Dr. Richard Schneider, Tr. 468-78; and two nonexamining opinions from acceptable medical sources: Dr. John Robinson, Tr. 70-83, and Dr. Renee Eisenhauer, Tr. 85-99.

Plaintiff fails to argue or establish any specific error as to the ALJ's consideration of these opinions, focusing instead on the general argument that "the ALJ summarily determined that any treating or examining physician who opined that [Plaintiff] could not work due to his work injury was inconsistent with the work record." ECF No. 16 at 13. Plaintiff also argues that the ALJ does not indicate whether or not Plaintiff's spinal impairment or mental health impairment remained the same from the date of his injury through his alleged disability onset date, nor does the ALJ cite to medical records that outline any changes in Plaintiff's condition. ECF No. 16 at 13. Although Plaintiff is correct that the ALJ does not make findings as to whether Plaintiff's impairments remained the same or worsened during the period of time that he was working before his alleged disability onset date, as discussed *supra*, the ALJ cited to medical records approximate to his disability onset date that were inconsistent with the severity of

his alleged physical limitations.  Tr. 22; *see, e.g.,* Tr. 271-75, 285-89, 297-99, 445-47.  Further, as discussed *supra*, the ALJ found that Plaintiff's mental impairments were not as severe as alleged during the relevant time period, as Plaintiff had no documented mental health care.  Tr. 26.

Because Plaintiff only contests the ALJ's weighing of the opinion evidence with respect to his work history, Plaintiff has waived any argument as to the evaluation of any of the medical source opinions in regard to reasons other than inconsistency with Plaintiff's work activity.  *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.  Despite Plaintiff's waiver, the Court reviewed the record and finds the ALJ's weighing of the medical opinions is supported by specific and legitimate reasons supported by substantial evidence.

*1.  Dr. Staley – Physical Opinion*

In July 2015, state agency medical consultant Norman Staley, M.D. reviewed the medical record and opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally.  Tr. 92-93.  He opined that Plaintiff could stand and/or walk for two hours in an eight-hour workday, sit for six hours in the same period, occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and never climb ladders, rope, or scaffolding.  Tr. 93.  He opined that Plaintiff needed to avoid concentrated exposure to vibration and hazards.  Tr 94.

Dr. Staley concluded that Plaintiff would be limited to sedentary exertional level work. Tr. 97. The ALJ gave Dr. Staley's opinion significant weight. Tr. 28.

Plaintiff contends the ALJ erred by giving significant weight to the opinion of Dr. Staley, a reviewing physician, and little weight to Plaintiff's treating and examining providers. ECF No. 16 at 13. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The ALJ found that the opinion of Dr. Staley was consistent with Plaintiff's work history, longitudinal examination findings during the relevant period, and longitudinal treatment records during the relevant period. Tr. 28. Plaintiff suggests the ALJ should have credited the opinions of Plaintiff's treating and examining providers over the opinion of the reviewing doctor. However, as discussed *infra*, the ALJ provided legally sufficient reasons for giving less weight to the opinions of the treating and examining providers and for giving more weight to Dr. Staley's opinion.

### 2. Dr. Seltzer – Physical Opinion

Plaintiff's examining orthopedic surgeon, S. Daniel Seltzer, M.D., completed a report in November 2016. Tr. 587-95. Dr. Seltzer opined that Plaintiff was capable of full-time work at a light level, with no lifting or carrying over 10 to 15 pounds and avoidance of twisting, bending, and stooping. Tr. 595. The ALJ gave significant weight to Dr. Seltzer's assessment with respect to Plaintiff's functioning through his date last insured, however the ALJ gave greater weight to the nonexamining physician's assessment of the ability to lift and carry 10 pounds frequently and 20 pounds occasionally. Tr. 29. Because Dr. Seltzer's opinion as to Plaintiff's lift and carry limitations was contradicted by the nonexamining opinion of Dr. Staley, Tr. 92-93, the ALJ was required to provide

specific and legitimate reasons for discounting this aspect of Dr. Seltzer's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found that Dr. Seltzer's opinion was consistent with Plaintiff's work history, longitudinal examination findings during the relevant period, and longitudinal treatment records during the relevant period. Tr. 29. However, given Plaintiff's history of working at a medium to heavy exertional level after the onset of his spinal impairment, the ALJ gave greater weight to the nonexamining physician's opinion as to Plaintiff's lift and carry limitations. Tr. 29. "The ALJ may reject a medical opinion that is inconsistent with the claimant's work activity." *Schultz v. Berryhill*, No. 3:16-cv-00757-JR, 2017 WL 2312951, at *4 (D. Or. Apr. 21, 2017) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009)). Here, the ALJ observed that Plaintiff continued working at a medium/heavy exertional level for several months after his back injury in September 2013, Tr. 26 (citing Tr. 197-98), and his work ended for reasons unrelated to Plaintiff's functional capacity, Tr. 26 (citing Tr. 48-49). The ALJ reasonably concluded that the record documented work activity that was more consistent with Dr. Staley's assessment that Plaintiff was able to lift and carry 10 pounds frequently and 20 pounds occasionally. Tr. 29; *see, e.g.,* Tr. 197-98 (Plaintiff reported that he was working full-time as an unloader at Walmart through January 2014, where he walked for seven hours each day, stood for one hour each

day, unloaded up to 80 to 90 pounds from trucks, frequently lifted 30 to 40 pounds, and spent "a little more than [half a] day" carrying things). Even if the ALJ erred in rejecting the lift and carry limitations opined by Dr. Seltzer, the error would be harmless as the vocational expert identified three sedentary level jobs that Plaintiff was capable of performing. Tr. 60-61. This finding was a specific and legitimate reason, supported by substantial evidence, for the ALJ to discount the lifting and carrying aspect of Dr. Seltzer's opinion.

### 3. Mr. Anderson – Physical Opinion

Between January 2014 and March 2014, treating chiropractor Jory Anderson, DC, opined that Plaintiff could seldom sit, stand, or walk, and could never lift over 10 pounds. Tr. 26 (citing Tr. 309-12). Dr. Anderson reported that Plaintiff was not released to work due to his spinal impairment. Tr. 309-12. The ALJ gave Mr. Anderson's opinion minimal weight. Tr. 26. Because Mr. Anderson was an "other source," the ALJ was required to provide germane reasons to discount his opinion.[4] *Dodrill*, 12 F.3d at 918.

First, the ALJ determined that Mr. Anderson's assessments were incompatible with Plaintiff's ability to work at a medium/heavy exertional level for

_____

[4] As a chiropractor, Mr. Anderson is considered an "other source" under 20 C.F.R. § 404.1513(d)(1) (2013).

several months after his back injury in September 2013. "The ALJ may reject a medical opinion that is inconsistent with the claimant's work activity." *Schultz*, 2017 WL 2312951, at *4 (citing *Valentine*, 574 F.3d at 692-93). Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin*, 966 F.2d at 1258. Here, the ALJ observed that Plaintiff continued working at a medium/heavy exertional level until January 2014 and ended his work for reasons unrelated to his functional capacity. Tr. 26, 48-49, 197-98. The ALJ reasonably concluded that the record documented work activity that was inconsistent with Mr. Anderson's opinion that Plaintiff could seldom sit, stand, or walk, and could never lift over 10 pounds. Tr. 26; *see, e.g.*, Tr. 197-98 (April 2010: Plaintiff reported that he was working full-time as an unloader at Walmart through January 2014, where he walked for seven hours each day, stood for one hour each day, unloaded up to 80 to 90 pounds from trucks, frequently lifted 30 to 40 pounds, and spent "a little more than [half a] day" carrying things). This was a germane reason to discredit Mr. Anderson's opinion.

Second, the ALJ found that Mr. Anderson's opinion was inconsistent with other medical evidence in the record. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028,

ORDER - 36

1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. Here, the ALJ determined that

Plaintiff's presentation during his initial visit with Mr. Anderson in January 2014

was notably inconsistent with medical care that Plaintiff had received just a few

days earlier, and other examination findings and treatment records severely

undermined the reliability of Mr. Anderson's assessment. Tr. 26; *see* Tr. 308

(January 16, 2014: at his initial visit with Mr. Anderson, Plaintiff needed assistance

throughout his examination due to alleged symptoms that prevented him from

walking without assistance); Tr. 285-89 (January 11, 2014: Plaintiff had generally

normal inspections of his back); Tr. 445-47 (January 11, 2014: Plaintiff had mild

pain, denied weakness to the lower extremities, had pain from a seated to standing

position, point tenderness was localized to the lower lumbar mid spine, positive

straight leg raise test, gait was unremarkable); Tr. 297-99 (January 12, 2014:

Plaintiff denied paresthesia, exhibited normal gait and normal inspection of his

back); Tr. 274-75 (February 2014: Plaintiff reported his symptoms had "improved

tremendously" with his conservative treatment regimen, demonstrated full strength

in all muscle groups of all four extremities, with intact sensation). The ALJ

therefore gave greater weight to other assessments that were consistent with the

record as a whole, and which came from acceptable medical sources. Tr. 26. This

was a germane reason to discredit Mr. Anderson's opinion. Further, Plaintiff fails

to challenge the ALJ's finding, and therefore, argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

### 4. Dr. Rudd – Physical Opinion

Plaintiff's examining physician, Eric Rudd, M.D., completed an independent orthopedic evaluation in January 2015. Tr. 455-63. Dr. Rudd concluded that Plaintiff was not at a point of maximum medical improvement and that it was premature to rate his degree of impairment. Tr. 462. When asked about Plaintiff's physical limitations and capability for gainful employment, Dr. Rudd stated that Plaintiff would remain off work pending reevaluation by his neurosurgeon, Dr. Wahl. Tr. 462. Dr. Rudd noted, "[h]opefully treatment measures will increase [Plaintiff's] functionality and get him back to the workforce." Tr. 462. Dr. Rudd did not give any other assessment of Plaintiff's abilities or limitations. Tr. 455-63.

The ALJ found that Dr. Rudd's evaluation did not appear to contain any opinions about Plaintiff's occupational functioning, and instead deferred such a determination. Tr. 27. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999). Dr. Rudd did not offer an opinion about Plaintiff's physical limitations or capability for gainful employment, rather, he reported that Plaintiff would remain off work pending reevaluation by his neurosurgeon. Tr. 462. This was a

specific and legitimate reason for the ALJ to discount Dr. Rudd's opinion.

Plaintiff fails to challenge the ALJ's finding, and therefore, argument on this issue

is waived.  *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

### 5. ARNP Ang – Physical Opinion

Plaintiff's treating ARNP, Dennis Ang, completed a medical report in

August 2015.  Tr. 393-94.  ARNP Ang opined that Plaintiff could sit for 30

minutes at a time for a total of about four hours in an eight-hour workday, stand for

30 minutes at a time, and stand and/or walk for a total of about two hours in the

same period.  Tr. 393.  He opined that Plaintiff could occasionally lift and carry 20

pounds, had an unspecified degree of difficulty with stooping, crouching, kneeling,

and pulling, could rarely reach to the floor, could frequently reach above his

shoulders and to waist level, and could consistently handle objects.  Tr. 393-94.

He opined that Plaintiff would likely be absent from work more than four days per

month but added it "depends on the type of work."  Tr. 393.  In May 2016, ARNP

Ang opined that the limitations described in his assessment from August 2015 had

been ongoing since the original date of Plaintiff's injury in September 2013.  Tr.

537.

In June 2016, ARNP Ang opined that Plaintiff could stand and/or walk

between one and three hours per workday and needed to change position after 45

minutes of sitting.  Tr. 557.  He opined that Plaintiff could never climb ladders and

could seldom reach, crawl, kneel, or stoop, could seldom lift 25 pounds, could occasionally lift 15 pounds, and could frequently lift 10 pounds. Tr. 557. ARNP Ang gave this same assessment in October 2016 and November 2016. Tr. 614, 619. The ALJ gave ARNP Ang's opinion minimal weight. Tr. 28. Because ARNP Ang was an "other source," the ALJ was required to provide germane reasons to discount his opinion.[5] *Dodrill*, 12 F.3d at 918.

First, the ALJ determined that ARNP Ang's assessments were incompatible with Plaintiff's work history. Tr. 28. "The ALJ may reject a medical opinion that is inconsistent with the claimant's work activity." *Schultz*, 2017 WL 2312951, at *4 (citing *Valentine*, 574 F.3d at 692-93). Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin*, 966 F.2d at 1258. Here, the ALJ observed that Plaintiff continued working on a full-time basis at a medium/heavy exertional level for several months after his back injury in

_____

[5] ARNP Ang is not considered an "acceptable medical source[]" under the regulations. 20 C.F.R. § 404.1513(d)(3). Although the regulations were amended on March 27, 2017 to include advanced registered nurse practitioners as acceptable medical sources, the amendment applies to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7). Plaintiff's claim was filed on November 5, 2014, and thus, ARNP Ang is considered an "other source."

September 2013, and his employment ended for reasons unrelated to Plaintiff's

symptoms, impairments, or limitations. Tr. 26, 48-49, 197-98. The ALJ

reasonably concluded that the record documented work activity that was

inconsistent with ARNP Ang's opinion that since September 2013, Plaintiff was

limited to standing for 30 minutes at a time, standing and/or walking for a total of

about two hours in an eight-hour workday, and occasionally lifting and carrying 20

pounds. Tr. 28, 393; *see, e.g.,* Tr. 197-98 (April 2010: Plaintiff reported that he

was working full-time as an unloader at Walmart through January 2014, where he

walked for seven hours each day, stood for one hour each day, unloaded up to 80

to 90 pounds from trucks, frequently lifted 30 to 40 pounds, and spent "a little

more than [half a] day" carrying things). This was a germane reason to discredit

ARNP Ang's opinion.

Second, the ALJ found that ARNP Ang's assessments were inconsistent

with Plaintiff's longitudinal treatment history. Tr. 28. An ALJ may discredit

physicians' opinions that are unsupported by the record as a whole. *Batson*, 359

F.3d at 1195. As discussed *supra*, Plaintiff's physical symptoms showed an

improvement with surgical and pharmaceutical treatment. *See* Tr. 349-50 (August

5, 2014: after his July 2014 surgery, Plaintiff reported "significant improvement"

in his symptoms, with reduced back pain and increased activity level, exhibited full

strength in his lower extremities, intact sensation in all lower extremity

dermatomes, steady and non-antalgic gait, and negative straight leg raises, was

given instructions to begin weaning off of a back brace in two to three weeks, and

was referred to additional physical therapy); Tr. 377-78 (January 2015: during an

orthopedic appointment, the provider noted that Plaintiff had been "doing

extremely well," his leg pain had improved, although he exhibited antalgic gait in

his left leg, concurrent with reports of pain symptoms in his left leg); Tr. 479-84

(July and August 2015: Plaintiff reported that his pain symptoms were manageable

with daily use of pain medication, he could tandem walk without difficulty on the

right and with a little difficulty on the left, and he exhibited "excellent" bilateral

strength throughout both of his legs). The ALJ reasonably concluded that this

record of improvement with treatment was inconsistent with ARNP Ang's opinion

that Plaintiff was incapable of meeting the demands of sedentary work. Tr. 28.

This was a germane reason to discredit ARNP Ang's opinions. Furthermore,

Plaintiff fails to challenge the ALJ's determination as to this aspect of the decision,

and therefore, argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161

n.2; *Kim*, 154 F.3d at 1000.

Third, the ALJ found ARNP Ang's opinion was not supported by the

longitudinal examination findings. Tr. 28. A medical opinion may be rejected if it

is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at

1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149. Here, the ALJ

observed that ARNP Ang's opined limitations were inconsistent with the longitudinal examination findings, as treatment in 2015 through his date last insured in September 2015 documented only slight neurological deficits and manageable pain symptoms. Tr. 28; *see* Tr. 387-88 (May 2015: Plaintiff had a normal examination of his lower extremities, moved without difficulty, did not rise to stand during conversation, was taking no medication, and was told to use ice and heat for his spinal impairment); Tr. 389-91 (May 2015: Plaintiff reported pain as a three on a 10-point scale, reported infrequent use of Percocet, "slightly positive" left straight leg raise, and examination found no significant neurological deficit). The ALJ reasonably concluded, based on this record, that ARNP Ang's opined limitations were inconsistent with the examination record. Tr. 28. This was a germane reason to discredit ARNP Ang's opinion. Furthermore, Plaintiff fails to challenge the ALJ's determination as to this aspect of the decision, and therefore, argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

Finally, the ALJ found that ARNP Ang's assessment from August 2015 was equivocal as to Plaintiff's ability to maintain attendance. Tr. 28, 393. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041. ARNP Ang opined that Plaintiff would likely be absent from work more than four days per month but added it "depends on the type

ORDER - 43

of work." Tr. 393. As noted by the ALJ, this assessment is equivocal, suggesting that Plaintiff may be able to maintain attendance with less strenuous work. Tr. 28. Moreover, ARNP Ang opined that this limitation had been ongoing since Plaintiff's injury in September 2013, but there was no evidence in the record to suggest that Plaintiff was absent from his job at Walmart for more than four days per month. This was a germane reason to reject ARNP Ang's opinion as to Plaintiff's ability to maintain attendance. Furthermore, Plaintiff fails to challenge the ALJ's determination as to this aspect of the decision, and therefore, argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

   *6. Dr. Schneider, Dr. Robinson, and Dr. Eisenhauer – Mental Opinions*

   Plaintiff's examining psychiatrist, Richard Schneider, M.D., completed an independent medical examination report in September 2015. Tr. 468-78. Dr. Schneider diagnosed Plaintiff with a depressive disorder that pre-dated Plaintiff's back injury in September 2013. Tr. 473, 475. He opined that there was no evidence of a causal relationship between Plaintiff's depressive disorder and his back injury. Tr. 475. He also noted that there was no objective evidence to support a diagnosis of a depressive disorder, but that the diagnosis could be justified by Plaintiff's subjective reports. Tr. 475. He opined that Plaintiff did not require any psychiatric accommodations or restrictions in the workplace. Tr. 477.

State agency psychological consultant John Robinson, Ph.D. reviewed the record in May 2015.  Tr. 70-83.  Dr. Robinson opined that Plaintiff had no limitations in his understanding and memory, he could learn and perform detailed tasks, and he might have difficulty performing fast-paced work or sustained multitasking due to impaired concentration, but he could learn and complete other tasks for regular work periods.  Tr. 79.  He opined that Plaintiff could work in the presence of the general public, could manage simple task cooperation with known coworkers, and had moderate limitations in his ability to respond appropriately to changes in a work setting.  Tr. 80.  In July 2015, another state agency psychological consultant, Renee Eisenhauer, Ph.D, affirmed this opinion.  Tr. 85-99.

The ALJ gave significant weight to Dr. Schneider's assessment of a general lack of mental limitations, which the ALJ determined to be consistent with Plaintiff's history of full-time employment despite his longstanding and untreated depressive disorder, as well as examination findings and lack of objective evidence of psychological limitations during the relevant period.  Tr. 30.  However, due to Plaintiff's combination of impairments and substance use during the relevant period, the ALJ incorporated mental limitations opined by Dr. Robinson into Plaintiff's RFC, including the ability to understand, remember, and carry out

simple instructions, make judgments commensurate with the functions of unskilled work, and to tolerate occasional changes in the work environment.  Tr. 21, 29-30.

Plaintiff fails to assert any challenge to the ALJ's evaluation of the mental opinion evidence.  Therefore, argument on this issue is waived.  *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

**C. Step Five**

Plaintiff contends the ALJ erred at step five because the ALJ relied upon an RFC and hypothetical that failed to include all of Plaintiff's limitations, including his inability to sit for long periods of time.  ECF No. 16 at 13-16.  However, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant.  *Bray*, 554 F.3d at 1228.  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id*.  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by

substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). A claimant fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

Plaintiff asserts that his inability to sit for long periods of time make him unable to perform sedentary work, which is supported by Mr. Anderson's opinion that Plaintiff could only seldomly sit and stand/walk, and ARNP Ang's opinion that Plaintiff could sit for only 30 minutes at a time for a total of about four hours in an eight-hour workday. ECF No. 16 at 15-16. Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *See Stubbs-Danielson*, 539 F.3d at 1175 (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations"). For reasons discussed throughout this decision, the ALJ's adverse findings in regards to Plaintiff's subjective symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC and posed a hypothetical to the vocational expert that incorporated all of the limitations in the ALJ's RFC determination, to which the expert responded that jobs within the national

economy exist that Plaintiff could perform.  The ALJ properly relied upon this testimony to support the step five determination.  Therefore, the ALJ's step five determination that Plaintiff was not disabled within the meaning of the Social Security Act was proper and supported by substantial evidence.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error.  **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

DATED April 29, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE